James E. BROWN, Appellant,

v.

John O. MARSH, Jr., Secretary of the Army.

No. 84–5286.

United States Court of Appeals, District of Columbia Circuit.

Argued March 29, 1985.

Decided Nov. 15, 1985.

128 Cong.Rec. S8659 (daily ed. July 19, 1982).

James E. Brown, pro se.

Michael J. Ryan, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Royce C. Lamberth, John Oliver Birch and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellees.

Before WALD, MIKVA and STARR, Circuit Judges.

Opinion for the Court filed by Circuit Judge MIKVA.

Dissenting Opinion filed by Circuit Judge STARR.

MIKVA, Circuit Judge:

James E. Brown, a black civilian employee of the United States Department of the Army, appeals *pro se* from the district court's dismissal of this Title VII suit alleging race discrimination in employment. Defendant-Appellee John O. Marsh, Jr., appears in his official capacity as Secretary of the Department of the Army. For convenience, we will refer to the appellee simply as "the Army." Because we find that the plaintiff did not fail to exhaust his administrative remedies and because the Army is anyway precluded from asserting that the plaintiff has failed to exhaust those remedies, we reverse and remand.

This appeal is merely the latest episode in what has been a protracted struggle between Brown and his employer. The procedural history of this case is inordinately complex and it would not be worthwhile to inventory it exhaustively even if the various filings in this case provided us with sufficient information to do so confidently and accurately, which they do not. The following broad outline must suffice.

In March 1971, the Army appointed Brown to the post of GS–5 Accounting Technician in Frankfurt, West Germany. (Although the record is not entirely clear on the matter, it appears that Brown, a disabled veteran, had been living in Germany since 1964 and had previously been employed by the Army in other capacities.) In August 1971, Brown was promoted to GS–7 and transferred to another German city, Worms. His problems with his employer apparently began when he arrived there. In Worms, the Civilian Personnel Officer ("CPO") denied Brown certain benefits that Brown believed he had been granted by the appointing officer. Brown believed that the CPO's actions were racially motivated and discriminatory, and he responded by filing a complaint against the CPO and others. According to Brown, the Director

of Civilian Personnel contacted him shortly thereafter, pressed him to withdraw his accusations, and threatened him with dismissal and blacklisting if he failed to cooperate. Brown refused to comply and was, in fact, subsequently fired.

Alleging discrimination and retaliation, Brown successfully contested his removal and was reinstated with back-pay in July 1972. Only months later, in December of 1972, he was dismissed again. Appellant again contested his removal and again won reinstatement. Although back-pay was initially denied, after litigation, Brown obtained a backpay award from the United States Court of Claims. In March 1973, the Army dismissed Brown for the third time—ostensibly as part of a reduction in force. For the third time, Brown contested his removal and won reinstatement. Following this third dismissal in less than two years, the Director of the Civil Service Commission allegedly contacted the Secretary of the Army to protest the Army's conduct and insist that such improprieties cease.

After Brown won his third reinstatement, the Army allegedly changed tactics, and adopted a policy of denying him benefits and promotion. In the ensuing months, Brown contends he met repeatedly with his Equal Employment Opportunity ("EEO") Counselor to complain about his treatment. From then on, the sequence of events becomes increasingly confusing and unclear. (One of the many deficiencies in the record before us is the absence of a clear and complete chronological history of this dispute.) It appears, however, that in 1974–75, Brown filed a complaint alleging that the Army was discriminating against him by improperly refusing to accurately classify his job and improperly refusing to accord him the grade allotted to non-minority personnel who performed the same job. Several months later, in the summer of 1975, a portion of Brown's duties were transferred away, and he was advised to apply for a new job; he attempted to do so but his efforts were—in his opinion, wrongfully—thwarted. Allegedly, the personnel officer first refused to process his applica-

tions at all and then placed Brown's name on a referral list with the obviously disqualifying annotation that Brown should not be selected because he was ineligible under Army and Department of Defense guidelines.

In November of 1975, Brown contends, he learned that the CPO had notified his supervisors that he was to be dismissed. At approximately the same time Brown says he discovered that the personnel office had refused to process a recommendation filed on his behalf by his superiors suggesting that he be granted career civil service status. Appellant also learned that the CPO had given his superiors specific orders not to promote him and had told those in charge of filling the vacancies for which he had applied not to select him. Also in November of 1975, Brown allegedly informed the EEO Counselor that he wanted to file suit in federal court and was told that he could not sue on the basis of discriminatory nonpromotion because he had raised that issue in a still pending prior complaint.

From that point on, matters further degenerated. Brown seems to have filed a number of complaints—all loosely related and all alleging various manifestations of discrimination—which went up and down the administrative hierarchy and eventually led to litigation in the Court of Claims, the Federal Circuit, the Middle District of Tennessee, and the district and appellate courts of the District of Columbia. The Tennessee suit survived the government's motion to dismiss for lack of subject matter jurisdiction but was transferred to the District of Columbia based on a finding of improper venue. The District of Columbia district court then issued an order to the Equal Employment Opportunity Commission ("EEOC") to expedite its consideration of the matter which had been pending before it for approximately four years and dismissed without prejudice pending the EEOC's determination. A separate suit initially filed in the District of Columbia was dismissed by the district court (a different district judge presiding) but partially re-

versed and remanded by this court upon appeal. Following the EEOC's decision affirming in part but vacating and remanding to the Army with respect to issues of Brown's nonselection for the Housing Management position and the Army's failure to convert Brown to career civil status, Brown moved to reopen the case in the District of Columbia, whereupon the case was reopened and apparently consolidated with the remanded portions of the other case. The government then moved to dismiss the whole suit for failure to exhaust administrative remedies, and the district court granted the motion. This appeal ensued.

As this thumbnail sketch indicates, Brown's suits have been pursued with varying degrees of success. However, it would also appear from past litigation that the Army *has* previously failed to apply non-discriminatory standards to Brown's employment. It is thus not fair to say, as the government tries to, that Brown's claims are overtly frivolous and have been uniformly rebuffed by every decisionmaking body that has heard them. On the contrary, the record indicates that he succeeded in winning reinstatement following a discharge on at least three separate occasions, that he was awarded back pay and credit for leave hours by the Court of Claims in 1982, that he has succeeded in obtaining vacatur and remand of administrative decisions on more than one occasion, that he successfully resisted a motion to dismiss for lack of subject matter jurisdiction in the district court of Tennessee, and obtained the reversal and remand of a previous decision of the District of Columbia district court. The degree of success the appellant has had in keeping his various lawsuits alive is particularly notable in light of the fact that he has conducted much of the litigation *pro se*, while living thousands of miles away in Europe. His adversary, by contrast, has had a large staff of skilled attorneys continuously at its disposal and has been able to pursue most of the litigation in fora located only minutes away from its main offices. Indeed, if one views only the results of past litigation, it would appear that intransigence has been the Army's suit.

There can be little doubt, however, that this dispute has gone on far too long and has burdened the time and resources of more different courts and judges than was reasonably necessary. It is also true that Brown's persistence has so exasperated some of our colleagues as to occasion veritable diatribes.

In a recent opinion, the Court of Appeals for the Federal Circuit fumed that Brown "does not take 'no' for an answer." *Brown v. United States*, 741 F.2d 1374, 1377 (Fed.Cir.1984). The court complained that the appellant "has succeeded in getting 17 decisions on his complaints, 12 of them now in published orders or opinions," that his suits have "required the attention of 16 federal judges on 30 occasions," and that "[s]ome judges have sat on more than one of his cases." *Id.* The court concluded that "[t]his waste of judicial resources must ... end." *Id.* We too can only deplore the excessively lengthy history of this dispute, although we think it appropriate to point out that the piecemeal nature of this litigation cannot be blamed entirely on Brown. Some of the repetition and delay was unavoidable, some resulted from tactical decisions made by the Army in conducting its defense, and some from the manner in which the courts handled the suits.

Although we decline to accept the harsh appraisals proffered by the Army, we agree that it is long past time for this matter to be resolved. It is thus with considerable regret that we conclude that the decision of the district court cannot stand.

The district court's decision and the Army's argument on appeal turn on the plaintiff's failure to exhaust administrative remedies, with respect to his claim of discriminatory nonselection or nonpromotion to the position of GS–9 Housing Management Assistant in August 1975 and GS–8 Supervisory Space Utilization Specialist in December 1975. With respect to the first position the Army claims that Brown failed

to contact an EEO Counselor within 30 days. The Army also suggests that the delay between contacting the EEO Counselor and filing the formal complaint was excessive.

Under 29 C.F.R. § 1613.214(a) (1983),

(1) ... The agency may accept a complaint for processing in accordance with this subpart only if: (i) The complainant brought to the attention of the Equal Employment Opportunity Counselor the matter causing him to believe he had been discriminated against within 30 calendar days of the date of that matter or, if a personnel action, within 30 calendar days of its effective date....

.    .    .    .    .

(4) The agency shall extend the time limits in this section: (i) When the complainant shows that he was not notified of the time limits and was not otherwise aware of them, or that he was prevented by circumstances beyond his control from submitting the matter within the time limits or (ii) for other reasons considered sufficient by the agency.

"[I]nsofar as is practicable," counseling is to be completed within 21 days. 29 C.F.R. § 1613.213(a). Once counseling is finished, the complainant has 15 days to file a formal complaint. *Id.*

The timeliness of Brown's consultation with the EEO Counselor was raised in the most oblique manner possible. The defendant's answer merely alleged that "[p]laintiff has failed to exhaust his administrative remedies." The Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss asserts with respect to the claim of nonselection for the Housing Management Assistant position that "the complaint was not the subject of an administrative complaint until September 6, 1976, some twelve and one half months after the selection was made on August 21, 1975." *Id.* at 3.

This is the only assertion made in the memorandum and is, on its face, clearly inadequate under prevailing regulations to establish the failure to exhaust administrative remedies. The regulations establish *no* set limitations on the amount of time that may pass between a statutory violation and the filing of a formal complaint. Time limits are placed on the number of days that may elapse between the violation and the first contact with an EEO Counselor (30 days) and between the final interview and filing the formal complaint (15 days). By contrast, the amount of time to be spent in counseling is not limited to any fixed period. 29 C.F.R. § 1613.213(a). The Army's memorandum failed to allege any breach of the fixed limitations periods and thus made no colorable showing of non-exhaustion. The Army's memorandum provides no information as to when appellant first contacted an EEO Counselor or what complaints appellant presented; it provides no information about the duration of counseling and no information as to when the final interview was held. Nor does the one affidavit filed by the Army in support of its motion overcome the deficiencies of the memorandum; the affidavit merely repeats the same very limited factual assertions.

Based on these meager representations, however, the district judge concluded that the "plaintiff has failed to exhaust his administrative remedies by filing administrative complaints within thirty days of the alleged violations of Title VII." *Brown v. Secretary of the Army*, No. 80–01169, slip op. at 1 (D.D.C. Mar. 5, 1984) (footnotes omitted). This conclusion is puzzling. First, it misstates the law since the complainant is not required to file an administrative complaint within thirty days of the violation—he need only contact the EEO Counselor. Second, even assuming that the district judge's reference to failure to file meant failure to contact an EEO Counselor, such failure is not adequately borne out by the record. The Army's memorandum and affidavit make no allegation as to when the plaintiff consulted the EEO Counselor. The plaintiff's various filings, however, do indicate that he was in frequent contact with the EEO Counselor and had first raised concerns about nonpromotion or nonselection for new, higher positions as early as January 1975. Third, the district

court's discussion appears to place the burden of establishing exhaustion on the plaintiff. This is improper, where, as here, the defendant failed to allege facts reasonably establishing a prima facie showing of nonexhaustion and the relevant records are in the defendant's custody.

As to the Supervisory Space Utilization Position, the Army alleges that no administrative complaint was filed at all. This presents a closer question. We are persuaded, however, that the Army did not establish the nonexistence of a complaint fairly covering the relevant issues. The Army relies on an affidavit to make its point, but the affidavit is inadequate for that purpose because it is not based on personal knowledge of Brown's dealings with the EEO office. It merely alleges that on a particular date in January 1984, the affiant inspected the file and found no complaint specifically addressed to Brown's 1975 non-selection for the Supervisory Space Utilization position. No facts are alleged to establish that the file is reliable and complete or to negate the possibility that materials might have been lost or mislaid in the nine intervening years. In fact, a perusal of various entries in the record indicates that the possibility of loss is not a purely theoretical one. The record before us contains numerous references to items that had apparently been misdelivered or mislaid and at least one reference to the files being in complete disarray following the sudden departure of an EEO Counselor. (We further note that the Plaintiff's Memorandum in Opposition to the Defendant's Motion to Dismiss points to a passing reference made in the administrative record to the processing of an administrative complaint as to the Supervisory Space Utilization position which would appear to create a reasonable inference that such a complaint was in fact filed. The appendix to which plaintiff cited, however, does not appear to be in the papers before us and the issue appears to have been ignored by the Army and the district court.)

Finally, the affiant's assertion that she found no specific complaint addressed to the particular position overlooks the fact that EEO complaints are to be liberally construed "since very commonly they are framed by persons unschooled in technical pleading." *Shehadeh v. Chesapeake & Potomac Telephone Co.,* 595 F.2d 711, 727 (D.C.Cir.1978) (footnote omitted). *See also President v. Vance,* 627 F.2d 353, 362 (D.C. Cir.1980). The Army's position is predicated on the sort of hypertechnical approach to the presentation of EEO complaints that this court has repeatedly criticized and rejected. As we explained in *President v. Vance,* the relevant inquiry is not whether the complainant has filed a detailed statement spelling out precisely his objections but whether the actions he did take were "adequate to put the [agency] on notice." *President,* 627 F.2d at 361. Moreover, we have suggested that notice may be adequate where a claim is brought to the agency's attention "during the course of the administrative proceeding" and "before it issued its final decision" even if the argument or claim is not clearly set out in the complaint. *Id.* Appellant alleges—and the Army seems not to deny—that he had repeatedly raised the issue of a continuing pattern of discriminatory nonpromotion and nonselection. In the circumstances of this case, therefore, we consider the Army's allegations, without more, insufficient to establish its entitlement to the dismissal of this case on nonexhaustion grounds.

Assuming *arguendo,* however, that plaintiff failed to pursue his administrative remedies in a sufficiently clear and timely fashion, we think it apparent that the Army should be deemed to have waived any objection.

The Army is correct, of course, when it asserts that Title VII plaintiffs are normally expected to exhaust administrative remedies, *see, e.g., Brown v. GSA,* 425 U.S. 820, 823–33, 96 S.Ct. 1961, 1963–68, 48 L.Ed.2d 402 (1976), and that the plaintiff who fails to comply, to the letter, with administrative deadlines "ordinarily will be denied a judicial audience." *Shehadeh,* 595 F.2d at 717–18 (footnote omitted).

Where we part company with the Army, however, is in its attempt to characterize the deadlines as absolute and insurmountable. Although the Army gives a passing nod to the established doctrine that equitable considerations will relieve a plaintiff of his obligation to comply to the letter with administrative procedures, the Army gives the doctrine no content. The Army is in essence trying to convert the ordinary rule into the invariable rule. It is apparent, however, that this is no ordinary, run-of-the-mill case.

■ As has been pointed out on more than one occasion, the administrative deadlines in question here are not jurisdictional. Rather, they function like a statute of limitations and "like a statute of limitations, [are] subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982). *See also Kizas v. Webster*, 707 F.2d 524, 543 (D.C. Cir.1983), *cert. denied*, 464 U.S. 1042, 104 S.Ct. 709, 79 L.Ed.2d 173 (1984). The existence of such excusing circumstances should be considered in light of the *purpose* of the doctrine of exhaustion of administrative remedies. As this court has stated, exhaustion

> is not an end in itself; it is a practical and pragmatic doctrine that 'must be tailored to fit the peculiarities of the administrative system Congress has created.' Exhaustion under Title VII, like other procedural devices, should never be allowed to become so formidable a demand that it obscures the clear congressional purpose of 'rooting out ... every vestige of employment discrimination within the federal government.'

*President v. Vance*, 627 F.2d at 363 (quoting *McKart v. United States*, 395 U.S. 185, 195, 89 S.Ct. 1657, 1663, 23 L.Ed.2d 194 (1969) and *Hackley v. Roudebush*, 520 F.2d 108, 136 (D.C.Cir.1975)) (footnotes omitted); *see also Loe v. Heckler*, 768 F.2d 409 (D.C. Cir.1985). Exhaustion is required in order to give federal agencies an opportunity to handle matters internally whenever possible and to ensure that the federal courts are burdened only when reasonably necessary. Congress wanted to give each agency "the opportunity as well as the responsibility to right any wrong that it might have done." *President*, 627 F.2d at 362. Congress never, however, wanted the exhaustion doctrine to become "a massive procedural roadblock to access to the courts." *Id.* Rather, "Congress contemplated that the exhaustion doctrine would be held within limits consonant with the realities of the statutory scheme." *Id.*

■ We think it amply evident that in the rather unusual circumstances of this case, the purpose of the doctrine was satisfied even if the letter was not. The history of this litigation is such that plaintiff would be substantially and unfairly prejudiced if dismissal on exhaustion grounds were permitted at this excessively late date. This court has only this year "stress[ed], in particular, that judges slight the legislature's central command if they fail to recall that Title VII was devised as a measure that would be kept accessible to individuals untrained in negotiating procedural labyrinths." *Loe v. Heckler*, 768 F.2d 409, 417 (D.C.Cir.1985). The *Loe* court made it clear that adequacy of notice is the core of Title VII's administrative exhaustion requirements, *see id.* at 416–20, and that "the strictures of common law pleading have no place in a scheme largely dependent upon self-service in drawing up administrative charges." *Id.* at 420.

Additionally, in this appeal, Brown has directed our attention to a letter from Darrow Varner, an EEO officer, to C.H. Snow, Chief, U.S. Army Civilian Appellate Review Office ("USACARO"), which, he suggests, constitutes an explicit waiver of any possible objection. The letter states in pertinent part:

> Mr. Brown has made it quite clear that he does not expect his complaint to be resolved locally because USACARO has already recommended to the command that the issues not be sustained. He states that he plans to proceed to court when his relief is denied and enjoin this complaint to a court case now pending.

*Based on the complexities of this case* and the already apparent assurances that any rejection of parts of this complaint would only serve to delay the processing, *it is the decision of this command that we waive possible issues of untimeliness* and request that an investigation of Mr. Brown's complaint be made so that a proposed decision can be formulated on all issues and, if possible, a resolution to this case reached. If no resolution is possible Mr. Brown can be given his full rights to further review within and without the Department of the Army.

Letter from Darrow Varner to C.H. Snow (Mar. 1, 1977), *reprinted in* Appellant's Brief at 11a–12a (emphasis added). We do not determine whether this letter alone could constitute a binding waiver since our perusal of the record indicates that it was never brought to the district judge's attention. We merely note in passing the dubious propriety of the Army's failure to ensure that the district court had this obviously relevant evidence before it for consideration. Even without the evidence of the letter, however, dismissal for failure to exhaust administrative remedies was clearly inappropriate.

First, the exhaustion doctrine's purpose (giving the agency notice of a claim and opportunity to handle it internally) has been amply satisfied. The record shows that the Army was made aware as early as January 1975 of plaintiff's belief that he was being discriminatorily denied promotion. The Army seeks to capitalize on Brown's failure to timely file separate complaints specifically spelling out his objections to particular nonselections at particular times for particular positions. But such specificity, although desirable, is not required. That the Army knew the plaintiff had a pending complaint alleging a continuing pattern of discriminatory nonpromotion gave it sufficient notice. We do not think it was beyond the intellectual resources of the Army to surmise that when plaintiff applied to no avail for two specific positions he might consider those two rejections to be further evidence of the continuing pattern of discriminatory nonpromotion of

which he had already complained. Further, Brown was in contact with his EEO Counselor during November and December of 1975 with respect to his claims of continuing discrimination. The Army's objection is particularly ironic in light of its protest that appellant Brown files too many excessively similar complaints. The Army argues in one breath that Brown files too many complaints and in the next that he does not file enough.

Second, the Army had the power to reject any complaints it considered untimely. *See* 29 C.F.R. § 1613.215 ("The head of the agency or his designate may reject a complaint which was not timely filed. . . ."). The Army chose, for reasons best known to itself, not to exercise that power. Since we think it consistent with public policy for an agency to voluntarily investigate allegations of racial discrimination even when not legally bound to do so, we are loath to hold that mere investigation without more constitutes a binding waiver of any agency's right to raise the timeliness issue. Indeed, one federal court has specifically held that an agency investigation alone does not constitute a waiver. *See Oaxaca v. Roscoe,* 641 F.2d 386, 390 (5th Cir.1981). However, we think it amply evident that the Agency here has gone far beyond mere investigation. The dispute in question here began a full ten years ago. Since then various parts of this matter have been extensively pursued at both the administrative and judicial level. The exhaustion problem has been raised sporadically. We think in fairness there must come a point where an agency's approach to a matter will preclude it from deploying the exhaustion doctrine to pull the rug out from under a Title VII plaintiff. We are persuaded that the point has been reached in this case. Ten years is too long to permit litigation to continue only to dismiss upon a ground, which if available at all, should have been pressed and resolved at the outset. In its decision, the EEOC took it for granted that the Army had totally waived any timeliness objection, *see, e.g., Brown v. Department of the Army,* EEOC Appeal No.

B01770402, slip op. at 2 (Jan. 30, 1981), and we think no other conclusion is reasonable.

We pause here to respond to the justifiable concerns expressed by our dissenting colleague about our use of preclusion and estoppel. The theory by which we conclude that the Army is precluded from asserting the timeliness issue here is different than the general theory of estoppel of which this court was somewhat skeptical in *General Accounting Office v. General Accounting Office Personnel Appeals Board*, 698 F.2d 516, 526 & n. 57 (D.C.Cir. 1983). Like the court in *GAO*, however, we do not and need not take any position on what the proper contours of the doctrine of equitable estoppel are or should be when applied against the government. *See id.* at 526 n. 57.

Our case today does not involve the application of the generalized doctrine of equitable estoppel. *Cf. Schweiker v. Hansen*, 450 U.S. 785, 787–89, 101 S.Ct. 1468, 1470–71, 67 L.Ed.2d 685 (1981) (showing necessary to estop the government from denying someone a governmental benefit based on misleading representations of its agents). Here we consider only the situation where the government is precluded from asserting what amounts to a legal defense. There is no suggestion in cases like *Schweiker* and *GAO* that the government is to be given preferential treatment in the application of equitable principles to procedural rules. Indeed, *Kizas v. Webster, supra,* and *Saltz v. Lehman*, 672 F.2d 207, 208–09 (D.C.Cir.1982), are directly on point and support the result we reach today. In both cases this court discussed the rigidity of timely-administrative-filing requirements in suits against government agencies for employment discrimination. In both cases the court cited the Supreme Court's opinion in *Zipes* as applicable precedent. *See Kizas* at 543, *Saltz* at 208. And in both cases the court acknowledged the principle that "[t]he timely charge-filing requirement ... is not a jurisdictional prerequisite to suit in district court; it operates 'like a statute of limitations, [which] is subject to waiver, estoppel, and equitable tolling.' " *Kizas* at 543 (quoting *Zipes* ).

In *Saltz*, the court approvingly noted that the Fifth Circuit had framed the appropriate inquiry in a case where the timely-filing requirement had not been met as "whether the equities nevertheless warrant[ ] equitable tolling of the thirty-day period." *Saltz* at 208 (citing *Oaxaca v. Roscoe, supra* ). We today do no more than follow the test previously prescribed by this court. We believe that the Army's conduct in the more than ten years that Mr. Brown has been in formal and informal contact with it regarding the matters complained of in this suit more than justifies our refusal to allow it to raise its claim of failure to timely consult an EEO counselor at this late date. The Army, as we point out *supra,* led Mr. Brown to believe that it was considering and investigating his complaints from the outset of this matter. We decline to now let the Army deprive Brown of the opportunity to prove his claims of employment discrimination.

Third, it is apparent that plaintiff would be substantially prejudiced by dismissal on this ground at this juncture while defendant would not be prejudiced at all by consideration of the merits except in the sense that it would lose an opportunity to rid itself of a troublesome lawsuit.

The plaintiff, an individual, who earns a modest salary and lives several thousand miles from this forum, has been put to considerable time and expense in his efforts to vindicate his rights as he sees them. He has incurred extensive court costs and has, it appears, several times travelled from Germany to the United States in order to further this litigation. These burdensome expenses and travels could very likely have been avoided if the Army had raised and proved its exhaustion defense at the earliest possible moment.

Finally and in sum, we note that it would be neither "practical" nor "pragmatic," *cf. President*, 627 F.2d at 363, to dismiss on exhaustion grounds now. No purpose reasonably related to the goals of the doctrine would be served by dismissal. Timely or untimely, the appellant's complaints have

been exhaustively processed at the administrative level. The litigants have been put to considerable time and expense and so have the courts. Although plaintiff did not itemize and describe these various equitable considerations, all are amply evident from the face of the pleadings and the slightest perusal of the record, and we think the district judge was bound to take them into account.

The Army's reliance on *Kizas v. Webster*, 707 F.2d 524, 544–45 (D.C.Cir.1983), *cert. denied*, 464 U.S. 1042, 104 S.Ct. 709, 79 L.Ed.2d 173 (1984), and *Siegel v. Kreps*, 654 F.2d 773, 777 (D.C.Cir.1981) is misplaced. Both cases arose in circumstances far different from those before us here. In *Kizas*, the plaintiff class of FBI clerical employees sued the agency on a fifth amendment takings clause theory and additionally alleged that the FBI's affirmative action program on behalf of women and minorities constituted reverse discrimination violative of Title VII. This court affirmed the district court's dismissal of the Title VII claim. The court found that no named plaintiff had complied with the filing requirement "either on time or belatedly," 707 F.2d at 543, and that the plaintiffs had attempted a "total bypass of the regulations governing the initiation of Title VII charges by federal employees." *Id.* at 545. "The plaintiffs justified their failure to file any sort of administrative claim at any time on the theory that it would have been futile. This court, however, found the charge of futility wholly unsubstantiated and further expressed doubt as to whether the futility doctrine could ever be properly invoked where "no party to the action has *ever* filed an initial charge with the agency." *Id.* (emphasis added). The court observed that *Zipes* enables a plaintiff to file late but is not a basis for "skipping entirely over the 'initial charge.'" *Id.* at 546.

In *Siegel*, this court affirmed the dismissal of a former census bureau employee's suit against the Secretary of Commerce. The employee had alleged discrimination on the basis of age and religion in the Department of Commerce's failure to select him for training programs. The court found

that "[a]ppellant failed to pursue *any* of the administrative remedies available to him with respect to the claim that in 1974 he was denied training because of religious discrimination." 654 F.2d at 776 (emphasis added). The court stressed that "[a]ppellant's lawsuit is defective not because he failed to file on a timely basis but because he failed to exhaust or even to begin his administrative remedies." *Id.* at 777. With respect to his discriminatory discharge claims the court found that "[n]o mention was made at any stage of those proceedings of either religious or age discrimination." *Id.* at 778. In short, in *Siegel*, as in *Kizas*, the court's decision turned not on the plaintiffs' failure to comply with the letter of the regulations but on their total failure to give the agency any reasonable notice of the claim or fair opportunity to resolve it internally.

In this case, by contrast, the appellant has been involved in extensive controversy with the Army for more than ten years. He dealt extensively with EEO Counselors. He has filed numerous complaints, which have gone up and down the judicial and administrative hierarchy and then up and down again. Indeed, the dates speak for themselves. The Army appears before us in 1985 with the fresh and clever theory that plaintiff failed to exhaust administrative remedies in 1975—*ten years ago*. In the interim, the plaintiff—an individual, private citizen earning a modest salary and living far from this forum—has been put to considerable trouble and expense to pursue his claim. Additionally, the resources of this and other federal courts have been liberally expended in attempting to resolve various aspects of the dispute. Fairness— which is the heart and soul of all notions of equity—prohibits us from permitting the government to raise, at this late date, a defense it ought to have pressed long ago, if it intended to press it at all. We stress that this court does not in any way approve or condone tardiness on the part of complainants in presenting complaints. We find, however, that, in the highly unusual circumstances of this litigation, to allow

the government a dismissal for failure to exhaust administrative remedies would be unconscionable.

Because we find that the Army has not conducted itself so as to preserve its exhaustion defense and further conclude that permitting the Army to raise the defense at this juncture would unfairly prejudice the appellant, we conclude that the decision below cannot stand. We take a dim view of the Army's intransigence in this matter, and hope that any further litigation will be conducted expeditiously. Perhaps the time has come for the Army to assess its losses and find a modus vivendi with Mr. Brown. It is certainly past time for all the many parts of this litigation to come to an end. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

*It is so ordered.*

STARR, Circuit Judge, dissenting:

I respectfully dissent. In my judgment, the district court properly dismissed Mr. Brown's complaint for failure to consult an EEO counselor within 30 days of the alleged discriminatory acts, as required by 29 C.F.R. § 1613.214(a)(1)(i) (1985).[1] I also find myself in disagreement with each of the various reasons given by the court for its contrary conclusion.

Let me begin, however, by reviewing our common ground. As I read the court's opinion, all of us agree that, as a general matter, a federal agency is entitled to enforce its time limits in the first instance with the expectation that its action will be

upheld upon review in the federal courts. Although section 717(c) of Title VII, conferring upon federal courts jurisdiction over Title VII claims advanced by federal employees, does not explicitly require compliance with an agency's time limits, that statute has been read to contain an implied "exhaustion" requirement. *E.g., Richerson v. Jones,* 572 F.2d 89, 94 (3rd Cir.1978); *see* 42 U.S.C. § 2000e–16(c) (1982) (requiring final action by agency as condition for filing civil suit). Thus, when an agency has consistently asserted a failure to comply with its time limits as a reason for denying relief on a particular claim, the district court, as this court recognizes, should treat those time limits functionally as a "statute of limitations" and, absent compelling equitable considerations, dismiss the complaint if it finds that the plaintiff failed to comply with those time requirements. *See* Maj.Op. at 14.[2]

For a number of reasons, the court nonetheless concludes that the district court's dismissal in this case was improper. The court's opinion first asserts that the Army raised the timeliness of Mr. Brown's consultation with an EEO counselor "in the most oblique manner possible," *id.* at 12, and then proceeds to diagnose various deficiencies in that regard in the Army's pleadings, *id.* at 12. To be sure, the Army's memorandum in support of its motion to dismiss does seem to confuse the formal administrative complaint, which must be filed within 15 days of the complainant's final interview with his or her EEO counselor, with the initial consultation

---

**1.** Since this failure is a sufficient ground for dismissal, I find it unnecessary for this court, or the district court, to decide whether Mr. Brown complied with the 15-day time limit for filing a formal administrative complaint. *See* 29 C.F.R. § 1613.214(a)(1)(ii) (1985). The pertinent regulations as set forth in the current volume of C.F.R. are essentially the same as those in effect during the period with which this case is concerned.

**2.** The "statute of limitations" analogy may not, however, be appropriate in all cases involving these particular time limits. Unlike the requirement of 42 U.S.C. § 2000e–16(c) that a plaintiff file a civil action within 30 days of the agency's

final action, *see e.g., Coles v. Penny,* 531 F.2d 609 (D.C.Cir.1976), and the requirement of § 2000e–5(e) that a complainant file an EEOC action within 180 days of the allegedly discriminatory action, *see e.g., Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982), the time limits at issue here are purely administrative. Thus, for example, it is doubtful that an agency could successfully assert noncompliance with its time limits as a ground for dismissal if the agency accepted, investigated, and decided the merits of a complaint without ever raising the timeliness issue. *Cf. Saltz v. Lehman,* 672 F.2d 207 (D.C.Cir.1982). But such a case is not before us.

with the EEO counselor, which (absent a waiver by the agency) must occur within 30 days of the alleged discriminatory act. *See* 29 C.F.R. § 1613.214(a)(1)(i)–(ii). Nonetheless, it seems clear from the motion to dismiss itself that the Army's motion was premised upon Mr. Brown's failure to consult with the EEO counselor within the requisite 30 days. The motion states: "Plaintiff failed to exhaust his administrative remedies by not filing his administrative complaints until after the 30 days required under the governing regulations or not at all." Defendant's Motion to Dismiss, *Brown v. Secretary of the Army*, No. 80–1169 (D.D.C. Jan. 17, 1984). Since the regulations speak of a 30-day time limit *only* with reference to consultations with an EEO counselor, it seems clear that the "administrative complaints" inartfully spoken of in the Army's motion include informal complaints to, or consultations with, an EEO counselor. The district court, moreover, clearly based its dismissal upon the 30-day time limit for consulting with an EEO counselor. *See Brown v. Secretary of the Army*, No. 80–1169, Slip Op. at 2 (D.D.C. March 5, 1984) (citing 29 C.F.R. § 1613.214(a)(1)(i)). Hence the army's filings in the district court, although scarcely models of clarity, adequately raised the untimeliness of Mr. Brown's consultation with the EEO counselor.

The court next asserts that the Army failed to establish that Mr. Brown had not complied with the 30-day requirement. This conclusion seems to me quite unwarranted. As to appellant's charge of non-selection for the Housing Management Assistant position, the necessary facts appear from the face of his amended complaint. There, plaintiff explicitly alleges that he applied for and was denied that position in *August 1975*. *See* Amended Complaint at 15, *reprinted in* Appellee's Brief app. at 68 (emphasis added).[3] The complaint also alleges that "on *November 11, 1975*, plaintiff consulted an EEO counselor, complaining that his non-promotion was part of a continuous pattern of discrimination and

reprisal." *Id.* at 19 (emphasis added). Although the complaint does not specifically state that his *first* consultation with the EEO counselor occurred on this date, that inference is fairly to be drawn since the pleading reflects an awareness that having had such a consultation is important to the case, and since the complaint mentions no other consultation. For purposes of a ruling on the Government's motion to dismiss, the district court was, of course, required to accept as true the facts alleged in Mr. Brown's complaint. Since the failure to comply with the 30-day requirement appeared from the complaint itself, it was, in my view, unnecessary for the Government to prove such a failure.

The court also asserts that, while Mr. Brown's compliance with the 30-day requirement in connection with the Supervisory Space Utilization position "presents a closer question," "the Army did not establish the non-existence of a complaint fairly covering the relevant issues." Maj.Op. at 9. This conclusion is, with all respect, in error. The court fails to acknowledge that Mr. Brown's complaint never alleged any consultation whatsoever with an EEO counselor about his non-selection for that position, and that, when provided an opportunity to prove that such a consultation indeed took place, appellant failed to produce any credible evidence of there having been such a consultation. *See Brown v. Secretary of the Army, supra,* Slip Op. at 2 n. 2. The Army, moreover, produced an unrebutted affidavit to the effect that Mr. Brown's EEO file contained no evidence of either a consultation or a formal administrative complaint. *Compare, e.g., Catrett v. Johns Manville*, 756 F.2d 181 (D.C.Cir. 1985), *cert. granted,* —— U.S. ——, 106 S.Ct. 342, 88 L.Ed.2d 285 (1985). The finding of the district court that there was no material issue of fact with respect to Mr. Brown's compliance with the time limits was therefore fully justified.

The court then seems to accept the argument, advanced by Mr. Brown in the district court, that his failure to comply with

---

**3.** The position apparently was filed on August 21, 1975. *See* Appellant's Reply Brief at 5a.

the 30-day requirement is excused by virtue of the two alleged instances of employment discrimination being part of a systemic and "continuous" pattern of discriminatory non-promotions. *See* Maj.Op. at 15. From my reading of the court's opinion, this appears to be the justification for the conclusion that Mr. Brown need not "file separate complaints specifically spelling out his objections to particular non-selections at particular times for particular positions." *Id.* The court states that since he "had a *pending* complaint alleging a continuing pattern of discriminatory non-promotion," *id.* (emphasis added), Mr. Brown need not necessarily lodge administrative charges complaining of these two rejections, which Mr. Brown might consider to be further evidence of the pattern, *see id.*

The court fails, however, to address the district court's reasoning rejecting that very argument. *See Brown v. Secretary of the Army, supra,* Slip Op. at 4–5. According to recent precedents of this court, a plaintiff, in order to prevail upon a claim of continuing discrimination, must allege either (1) "a series of related acts, one or more of which falls within the limitations period," or (2) "the maintenance of a discriminatory system both before and during the statutory period." *Milton v. Weinberger,* 645 F.2d 1070, 1075 (D.C.Cir.1981) (quoting B. SCHLEI & P. GROSSMAN, EMPLOYMENT DISCRIMINATION LAW 232 (Supp.1979)); *see also Valentino v. United States Postal Service,* 674 F.2d 56, 65 (D.C.Cir.1982) (quoting same language).

In order to satisfy the first prong of this test (and thereby avoid the 30-day requirement with respect to his Housing Management Assistant or Supervisory Space Utilization Specialist allegations), Mr. Brown must allege some other specific, related discriminatory action about which he did complain within the required 30-day period. This Mr. Brown has quite failed to do. Indeed, the only specific non-selections about which he complains are the two posts at issue in this case. Moreover, he is precluded by this court's order in an earlier proceeding, *Brown v. Marsh,* 711 F.2d 419 (D.C.Cir.1983), from re-alleging any dis-

criminatory denials of *re-employment* in order to satisfy this requirement. *See id.* Slip Op. at 3.

Any attempt to rely upon the second prong of the *Milton* test must fail for similar reasons, for Mr. Brown has failed to allege any *facts,* occurring during the limitation period, that are adequate to demonstrate the existence of a discriminatory system. *See Stoller v. Marsh,* 682 F.2d 971, 975 n. 3 (D.C.Cir.1982), *cert. denied,* 460 U.S. 1037, 103 S.Ct. 1427, 75 L.Ed.2d 787 (1983). Accordingly, Mr. Brown's allegations of a continuing pattern of discrimination cannot excuse his failure to comply with the agency's time limits.

Finally, the court suggests that the Army should be "precluded" from raising the timeliness issue and that the Army should therefore be *deemed* to have waived the time limits. *See* Maj.Op. at 13–14, 15–16. The court argues that enforcement of the time limits would not serve the purpose of the exhaustion doctrine in this case, *id.* at 15; that such enforcement would substantially and unfairly prejudice Mr. Brown if dismissal were permitted now, *id.* at 16; and that the Government ought in fairness to have pressed the timeliness issue long ago, *id.* at 17. Although the majority denies relying upon the "general theory of estoppel" in reaching this result, it has not pointed to any alternative legal theory under which such facts could justify "precluding" the Army from asserting non-compliance with its filing deadlines. Estoppel would seem to be the only doctrine under which facts such as these would be relevant.

Mr. Brown, in my view, has failed to meet the exacting requirements for securing an estoppel against the Government. Although the Supreme Court has refused to endorse the position that estoppel can never lie against the Government, *see Heckler v. Community Health Services,* 467 U.S. 51, ——, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984), the requirements for obtaining an estoppel are quite stringent. A recent decision of this court, *General Ac-*

*counting Office v. General Accounting Office Personnel Appeals Board,* 698 F.2d 516, 526 n. 57 (D.C.Cir.1983), suggested that estoppel generally will lie only when government officials engage in conduct that (1) "can be characterized as misrepresentation or concealment," or (2) "has caused or will cause an egregiously unfair result." 698 F.2d at 526. *See also Cooper v. Bell,* 628 F.2d 1208, 1214 (9th Cir.1980) (six requirements for establishing estoppel against government in Title VII case); *cf. Payne v. Block,* 751 F.2d 1191 (11th Cir. 1985) (*Heckler* did not require reversal of court's pre-*Heckler* holding that federal agency was precluded from enforcing valid regulation because of agency's failure to comply with its own instructions), *cert. granted,* —— U.S. ——, 106 S.Ct. 57, 88 L.Ed.2d 46 (1985). Contrary to the majority's suggestion, moreover, the unusually stringent requirements for estopping the Government from enforcing a substantive rule apply to procedural rules as well.[4]

Here, Mr. Brown clearly has failed to meet the first prong of the *GAO* test. He has not alleged any affirmative misrepresentation or concealment on the part of Army officials in their handling of the timeliness issue. No one appears to have tricked Mr. Brown into failing to comply with the deadlines. No one appears to have assured Mr. Brown that the timeliness issue would not be raised in the district court. Quite to the contrary, the issue was raised several times during the course of the administrative proceedings.

Moreover, contrary to the majority's assertion, Maj.Op. at 17, the Army apparently *did* exercise its power under 29 C.F.R. § 1613.215 to reject *both* of Mr. Brown's untimely complaints. The Army's rejection of the Supervisory Space Utilization position claim, however, was subsequently overturned by the EEOC's prede-

cessor—the Appeals Review Board of the U.S. Civil Service Commission—on what appears to me to be the erroneous ground that a complaint may not be "cancelled" for untimeliness unless the complainant received counseling prior to the cancellation. *See* Letter of Appeals Review Board to Darrow Varner (July 14, 1976). The Army then issued a final decision finding no discrimination in Mr. Brown's non-selection for that position. *See* Report of Investigation in the Complaint of Mr. James E. Brown, Docket # 07–77–005–E, Slip Op. at 6 (U.S. Army Civilian Appellate Review Office, May 25, 1977) ("Report"). *See also* Memorandum from Commanding General, HQ, V Corps, to Darrow Varner (June 22, 1977) (adopting Report as Army decision). That decision also declined to determine the merits of Mr. Brown's complaint with respect to the Housing Management Assistant position on the ground that Mr. Brown had not included that allegation, about which he filed a complaint on September 6, 1976, in his original grievance. *See* Report at 3. On appeal, the EEOC affirmed the Army's decision on the Supervisory Space Utilization position, but reversed as to the Housing Management Assistant position. The EEOC concluded that the September 6, 1976 complaint, although filed well after the original grievance, was sufficient to raise the issue. The EEOC also held that, by accepting for investigation the allegations in the September 6, 1976 complaint, the Army had "waived the question of timeliness." *See Brown v. Department of the Army,* EEOC Appeal No. B01770402, Slip Op. at 2 (Jan. 30, 1981). This decision was, in my view, entirely erroneous. *See Oaxaca v. Roscoe,* 641 F.2d 386, 390 (5th Cir.1981).

The Army, then, has proceeded with Mr. Brown's case only because of two erroneous decisions of the EEOC and its prede-

---

**4.** The Supreme Court in *Schweiker v. Hansen,* 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981), for example, reversed a Second Circuit decision holding that the Social Security Administration (SSA) was estopped to deny mother's insurance benefits to an applicant for failure to comply with the SSA's procedural requirement

that such applications be in writing. The Court specifically disapproved the distinction, drawn by the court below, between the applicant's "substantive eligibility" and her failure to satisfy a "procedural" requirement. *See id.* at 790, 101 S.Ct. at 1472.

cessor.[5] Even though there is no statutory provision permitting an agency to appeal rulings of the EEOC, the Army can scarcely be deemed to be precluded by these decisions from advancing its long-adhered to position with respect to the untimeliness of Mr. Brown's complaints. To hold otherwise would, among other things, be contrary to the policies undergirding the well-established principle that agency action is presumptively subject to judicial review. Moreover, the policy considerations favoring the finality of EEOC determinations, most notably the Congressional preference for resolving discrimination matters without resorting to the courts, evaporate once a Title VII plaintiff files a civil action against his or her agency. Such a plaintiff must therefore assume the risk that EEOC decisions favorable to his position might be judicially overturned.

Mr. Brown not only has failed to establish any misconduct on the part of the Army, he has also failed to meet the second prong of the *GAO* test by showing that dismissal of his complaint would produce an *egregiously* unfair result. Mr. Brown appears to have been promoted to the Supervisory Space Utilization Specialist position soon after the date, in December 1975, on which he claims to have been denied the position. At least as of May 25, 1977, when the Army examiner issued his report, Mr. Brown's position was listed as "Supervisory Space Utilization Specialist, GS–301–8." *See* Report at 23. And although Mr. Brown no doubt has expended a great deal of energy in prosecuting this action, I am dismayed to conclude that Mr. Brown seems to derive considerable satisfaction from the very process of litigation. This horribly prolix record contains employment applications in which appellant actually boasts of his vast litigation experience.

This, then, is just not the sort of case where the Army should be equitably estopped or otherwise precluded from raising its filing requirements as a defense. Even if I agreed with the court that some less stringent equitable theory applied, I would still conclude, on the basis of the facts above, that the equities do not in this case warrant "equitable tolling" of the thirty-day period.

My disagreement with the court's reasoning is thus rather complete. I think it is clear from the pleadings and from the other evidence before the district court that Mr. Brown failed to consult an EEO counselor within 30 days of the allegedly discriminatory non-selections at issue here. I think it equally clear that the Army did not waive or extend the time limits, and was not and is not now required by equitable considerations to do so. Rather, the Army rejected both of the complaints at issue here as untimely, and has steadfastly maintained, as it is entitled to do, that Mr. Brown was out of time. From this record, it appears to me, as it did to the district court, that the Army is quite right.[6]

I would therefore affirm the district court's decision.

---

**5.** The Army is, of course, obligated under 29 C.F.R. § 1613.205 to comply with orders of the EEOC.

**6.** The majority also relies upon this court's recent decision in *Loe v. Heckler,* 768 F.2d 409 (D.C.Cir.1985). *See* Maj.Op. at 13. Upon analysis, however, *Loe* provides scant support for the result reached today. The *Loe* court made it clear that the complainant in that case had complied fully with the applicable filing deadlines inasmuch as the filing periods had begun to run when the complainant *discovered* the agency's discriminatory acts rather than when those acts occurred. *See Stoller v. Marsh, supra,* 682 F.2d at 974. Mr. Brown, by contrast, has not contended that his failure to comply with the 30-day requirement resulted from his not knowing that the alleged discriminatory acts had occurred. It is neither unreasonable nor unduly technical for an agency, in a case such as this, to insist that a Title VII complainant comply with the straightforward requirement that he or she timely consult with an EEO counselor.